No. 22-50147

## IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

KEVIN TRAN,
*Defendant-Appellant.*

———————

On Appeal from the United States District Court
for the Central District of California, No. 8:21-cr-00193-PA-1
The Honorable Percy Anderson

———————

## Appellant's Opening Brief

———————

CUAUHTEMOC ORTEGA
FEDERAL PUBLIC DEFENDER
CENTRAL DISTRICT OF CALIFORNIA
JOSHUA D. WEISS
DEPUTY FEDERAL PUBLIC DEFENDER
321 East 2nd Street
Los Angeles, California 90012
(213) 894-3287
Josh_Weiss@fd.org

*Counsel for Defendant-Appellant*

# Table of Contents

**Page**

INTRODUCTION ........................................................................... 1

ISSUES PRESENTED ................................................................... 2

STATEMENT OF JURISDICTION ............................................ 3

STATEMENT OF THE CASE ...................................................... 4

I.    Mr. Tran was a passenger in his friend's car when it was pulled over for having an expired registration ................ 4

II.    Police officers ordered the driver and Mr. Tran to exit the vehicle and frisked them without finding any contraband ................................................................... 6

III.    The officers continued detaining Mr. Tran while they spent nearly five minutes retrieving his identification and running a records check on him ....................... 8

IV.    The officers searched the car for approximately 10 minutes and did not find any contraband .............................. 9

V.    Mr. Tran repeatedly refused the officers' requests for permission to search his backpack, but they searched it anyway .................................................................. 10

VI.    Mr. Tran was charged with a federal crime for possessing a firearm, and he moved to suppress the physical evidence and his statements ................................... 13

VII.    The District Court denied the motion to suppress, reasoning that a vehicle stop that is 20 minutes long could not be unlawfully prolonged and that the driver's consent to search the vehicle extended to Mr. Tran's backpack ................................................................. 17

VIII.  Guilty plea, sentencing, and custody status ......................... 19

i

SUMMARY OF ARGUMENTS ............................................................. 20

STANDARDS OF REVIEW ................................................................ 24

ARGUMENT ..................................................................................... 25

    I.    The evidence must be suppressed because the officers searched Mr. Tran's backpack in violation of the Fourth Amendment ............................................................... 26

        A.    Under long-settled precedent, the driver's consent to search the car did not authorize the officers to search the passenger's personal backpack ................. 27

        B.    The automobile exception did not authorize the search since the officers did not form probable cause that Mr. Tran's backpack contained evidence of a crime ...................................................... 32

    II.    The evidence must also be suppressed because the officers prolonged Mr. Tran's seizure in violation of the Fourth Amendment ............................................................... 50

        A.    In *Rodriguez*, the Supreme Court ruled that officers may not delay a car stop for any amount of time to conduct criminal investigations unrelated to the mission of the stop ........................... 50

        B.    This Court has repeatedly found car stops unconstitutional where they were prolonged for less time than Mr. Tran's .............................................. 54

        C.    The officers violated Mr. Tran's Fourth Amendment rights by prolonging the stop to conduct a far-ranging criminal inquiry ....................... 56

        D.    No independent reasonable suspicion justified Mr. Tran's prolonged detention ................................... 64

CONCLUSION ................................................................................. 70

# Table of Authorities

**Page(s)**

## Federal Cases

*Amanuel v. Soares*,
No. 13-cv-05258, 2015 WL 3523173 (N.D. Cal. 2015) ....................... 58

*Arizona v. Johnson*,
555 U.S. 323 (2009) ................................................................. 58, 60

*Brendlin v. California*,
551 U.S. 249 (2007) ....................................................................... 60

*California v. Acevedo*,
500 U.S. 565 (1991) ........................................................... 33, 39, 40

*Coolidge v. New Hampshire*,
403 U.S. 443 (1971) ................................................................. 35, 39

*Dawson v. City of Seattle*,
435 F.3d 1054 (9th Cir. 2006) ......................................................... 33

*Delaware v. Prouse*,
440 U.S. 648 (1979) ....................................................................... 60

*Florida v. Royer*,
460 U.S. 491 (1983) ................................................................. 39, 69

*Horton v. California*,
496 U.S. 128 (1990) ....................................................................... 37

*Illinois v. Gates*,
462 U.S. 213 (1983) ....................................................................... 33

*Katz v. United States*,
389 U.S. 347 (1967) ....................................................................... 25

*Kentucky v. King*,
563 U.S. 452 (2011) ....................................................................... 25

*Maryland v. Wilson,*
519 U.S. 408 (1997) ................................................................ 59, 60

*Navarette v. California,*
572 U.S. 393 (2014) ...................................................................... 64

*Reynoso v. Giurbino,*
462 F.3d 1099 (9th Cir. 2006) ...................................................... 34

*Rodriguez v. United States,*
575 U.S. 348 (2015) ............................................................ *passim*

*Sialoi v. City of San Diego,*
823 F.3d 1223 (9th Cir. 2016) ...................................................... 50

*Terry v. Ohio,*
392 U.S. 1 (1968) .......................................................... 50, 58, 59

*United States v. $277,000.00 U.S. Currency,*
941 F.2d 898 (9th Cir. 1991) ........................................................ 44

*United States v. Arreguin,*
735 F.3d 1168 (9th Cir. 2013) ...................................... 24, 27, 28, 32

*United States v. Basinski,*
226 F.3d 829 (7th Cir. 2000) ........................................................ 30

*United States v. Campbell,*
26 F.4th 860 (11th Cir. 2022) (en banc) ...................................... 53

*United States v. Cervantes,*
703 F.3d 1135 (9th Cir. 2012) ...................................... 25, 46, 47, 48

*United States v. Clark,*
902 F.3d 404 (3d Cir. 2018) .................................................... 53, 59

*United States v. Di Re,*
332 U.S. 581 (1948) ...................................................................... 49

*United States v. Evans,*
786 F.3d 779 (9th Cir. 2015) .................................................. *passim*

*United States v. Ewing,*
    638 F.3d 1226 (9th Cir. 2011) ............................................................. 33

*United States v. Faagai,*
    869 F.3d 1145 (9th Cir. 2017) ..................................................... 19, 33

*United States v. Gorman,*
    859 F.3d 706 (9th Cir. 2017) ...................................................... *passim*

*United States v. Guerrero,*
    921 F.3d 895 (9th Cir. 2019) .............................................................. 34

*United States v. I.E.V.,*
    705 F.3d 430 (9th Cir. 2012) ....................................................... 58, 59

*United States v. Ibarra,*
    345 F.3d 711 (9th Cir. 2003) .............................................................. 24

*United States v. Jaras,*
    86 F.3d 383 (5th Cir. 1996) ............................................................... 30

*United States v. Job,*
    871 F.3d 852 (9th Cir. 2017) .............................................................. 25

*United States v. Landeros,*
    913 F.3d 862 (9th Cir. 2019) ...................................................... *passim*

*United States v. Magallon-Lopez,*
    817 F.3d 671 (9th Cir. 2016) .............................................................. 19

*United States v. Majourau,*
    474 F.2d 766 (9th Cir. 1973) ....................................................... 42, 43

*United States v. Malik,*
    963 F.3d 1014 (9th Cir. 2020) ........................................................... 41

*United States v. Matlock,*
    415 U.S. 164 (1974) ............................................................................ 28

*United States v. Nault,*
    41 F.4th 1073 (9th Cir. 2022) ..................................................... 52, 53

*United States v. Ngumezi,*
980 F.3d 1285 (9th Cir. 2020)............................................................. 26

*United States v. Noster,*
590 F.3d 624 (9th Cir. 2009)......................................................... 44, 68

*United States v. Pulliam,*
405 F.3d 782 (9th Cir. 2005)............................................................. 60

*United States v. Ross,*
456 U.S. 798 (1982) ................................................................... *passim*

*United States v. Scott,*
705 F.3d 410 (9th Cir. 2012)............................................................. 34

*United States v. Underwood,*
725 F.3d 1076 (9th Cir. 2013).......................................................... 48

*United States v. Vasey,*
834 F.2d 782 (9th Cir. 1987).................................................. 33, 42, 43

*United States v. Vasquez,*
No. 19-50275, 2021 WL 3011997 (9th Cir. July 15, 2021)
(unpublished) ............................................................................... 40, 41

*United States v. Wanless,*
882 F.2d 1459 (9th Cir. 1989)........................................................... 42

*United States v. Washington,*
490 F.3d 765 (9th Cir. 2007)............................................................. 50

*United States v. Weber,*
923 F.2d 1338 (9th Cir. 1990)........................................................... 38

*United States v. Welch,*
4 F.3d 761 (9th Cir. 1993)........................................................ *passim*

*United States v. Williams,*
846 F.3d 303 (9th Cir. 2016)............................................................. 24

*United States v. Wilson,*
13 F.4th 961 (9th Cir. 2021) ............................................................. 24

*Wyoming v. Houghton,*
  526 U.S. 295 (1999) .............................................................. 34

**State Cases**

*People v. James,*
  645 N.E.2d 195 (Ill. 1994) ................................................... 31

*People v. Mead,*
  931 N.W.2d 557 (Mich. 2019) ............................................. 31

*State v. Suazo,*
  627 A.2d 1074 (N.J. 1993)............................................. 30, 31

**Federal Statutes, Rules, and Constitutional Provisions**

18 U.S.C. § 922(g)(1) ............................................................. 13

18 U.S.C. § 3231.......................................................................... 3

28 U.S.C. § 1291 ........................................................................ 3

Federal Rule of Criminal Procedure 12 ................................... 34

U.S. Const. amend. IV .................................................... *passim*

## INTRODUCTION

Kevin Tran went to his friend's house to do laundry. His friend then drove him home early in the evening. But just as they were arriving at Mr. Tran's house, police officers pulled over the car. It turned out that his friend's car had an expired registration. Even though Mr. Tran was a passenger—and not in control of the car or its registration—the officers proceeded to detain Mr. Tran on the side of the road for more than 20 minutes.

The officers first searched his body by lifting his shirt and touching his bare skin, and they then demanded his identification and ran a records check on him. After they did not find anything incriminating, the officers continued to hold him at the side of the road while they got permission from the driver to search the car. The officers then spent 10 minutes searching the car, but they continued to come up empty, finding no contraband or evidence of a crime.

Finally, the officers picked up Mr. Tran's personal backpack and confirmed that it was his—and not the driver's. The officers then repeatedly asked Mr. Tran for consent to search his bag, and he

repeatedly refused. The officers then searched the bag anyway, finding a gun.

The officers violated Mr. Tran's Fourth Amendment rights by detaining him without reason to believe he was involved in criminal activity and by searching his bag without indication—let alone the required probable cause— it contained evidence of a crime. For each independent reason, the evidence the officers found in the bag should have been suppressed. The District Court's decision to the contrary defied well-settled precedent and rubber stamped the officers' unconstitutional fishing expedition. This Court should reverse and order the evidence suppressed.

## ISSUES PRESENTED

1.    Did police officers violate Mr. Tran's Fourth Amendment rights when they searched his backpack, requiring suppression of the resulting evidence? This issue presents two sub-questions:

a.    In *United States v. Welch*, 4 F.3d 761 (9th Cir. 1993), this Court held that a driver's general consent to search a car did not extend to a bag that the officers knew belonged to a passenger, not the driver. *Id.* at 763–65. Did the District Court here err by concluding that the

driver's general consent to search the car authorized police officers to search Mr. Tran's bag, even though they knew the bag was Mr. Tran's and he explicitly refused consent to the search?

b.    Did the automobile exception justify the search of Mr. Tran's bag where the officers failed to form probable cause that the car contained evidence of a crime, let alone that there was any such evidence in Mr. Tran's bag?

2.    Is suppression independently warranted because the officers prolonged Mr. Tran's detention by conducting a far-ranging criminal investigation that was unrelated to the mission of the traffic stop or any independent reasonable suspicion, in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015)?

## STATEMENT OF JURISDICTION

This appeal is from the final judgment of conviction entered by the Honorable Percy Anderson, United States District Court Judge, on June 27, 2022.  (ER-3-7.)  Appellant Kevin Tran filed a timely notice of appeal on June 30, 2022.  (ER-247.)  The District Court had original jurisdiction under 18 U.S.C. § 3231.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

### I. Mr. Tran was a passenger in his friend's car when it was pulled over for having an expired registration

Garden Grove Police Officer Patrick Murphy was driving a patrol vehicle early in the evening when he saw a grey sedan that was missing its registration tags. (ER-100.) The officer ran the car's license plate through the police department's computer system and learned that its registration had been expired for approximately two years. (ER-100.) There was no indication from the computer system the car was reported stolen or missing. (*See* ER-100.)

Officer Murphy pulled the car over, exited his vehicle, and approached the car on foot. (ER-101.) As he approached, he saw that the car contained two people—the driver, Michael Nguyen, and a young man sitting in the front passenger seat, who turned out to be Kevin Tran. (ER-101.) The officer later wrote in a police report that he could smell marijuana when he approached the car. (ER-101.)

The driver, Mr. Nguyen, presented the officer with his driver's license and explained that the car belonged to his mother, who never properly registered the vehicle. (ER-101; Video Exhibit

E at 00:40-00:52.[1])  Mr. Nguyen said that he knew he needed to fix the registration.  In fact, Mr. Nguyen explained, the prior week he had been pulled over by another officer who removed the expired registration tag from the rear of the vehicle and warned him to register the car. (*See* ER-101; Video Exhibit E at 00:52-01:30.)  Mr. Nguyen also explained that his mother had purchased the car from its previous owner.  (Video Exhibit E at 01:50-02:00, 02:45-02:55.)  Mr. Nguyen then gave the officer his proof of insurance.  (Video Exhibit E at 02:55-03:09.) Officer Murphy told Mr. Nguyen that he would confirm the documentation and, assuming "everything's valid," he would just give Mr. Nguyen a "fix it ticket and that's it."  (Video Exhibit E at 02:35-02:45.)

---

[1] Citations to Video Exhibit E and Video Exhibit F refer to recordings captured by the body-worn cameras worn by Officer Murphy and Officer Mike Elhami, respectively.  The video exhibits are the subject of a motion to transmit physical exhibits filed concurrently with this brief.  Transcripts of the dialogue captured on the videos are available at ER-129-170.

## II. Police officers ordered the driver and Mr. Tran to exit the vehicle and frisked them without finding any contraband

Before Officer Murphy confirmed the validity of the car's documentation, additional officers arrived on the scene and Officer Murphy ordered Mr. Nguyen and Mr. Tran to exit the vehicle, one at a time. (Video Exhibit E at 03:10-03:17; ER-101.) Mr. Nguyen asked, "can I ask you why?" (Video Exhibit E at 03:18-03:22.) Officer Murphy then said that he needed to conduct additional checks to confirm that the car "actually belongs to you." (Video Exhibit E at 03:24-03:44.) Mr. Nguyen said, "I don't want to be treated like I'm some sort of, some criminal . . . . If it's just like a traffic violation, there's no reason for me to get pulled out of my car." (Video Exhibit E at 03:47-03:56.) Mr. Nguyen explained that this would not be the first time officers removed him from his car and frisked him after pulling him over for a minor traffic infraction. (Video Exhibit E at 03:57-03:59.) He then said that he pays his taxes, "I'm a dad. I'm not trying to stand in the street, get searched." (Video Exhibit E at 04:05-04:12.) The officer then said, "I need you to step out," and "why are you tryna give me shit?" (Video Exhibit E at 04:18-04:30.) Mr. Nguyen responded, "I'm not. I got

treated like this last time. That's not ok." (Video Exhibit E at 04:30-04:36; ER-135.)

Mr. Nguyen then exited the vehicle, at which point the officers held his hands behind his back, walked him away from the vehicle, and began frisking him. (Video Exhibit E at 04:40-05:00.) Mr. Nguyen told the officer that he had a pocket knife on him. (Video Exhibit E at 04:50-05:00.) The officer then frisked Mr. Nguyen, finding the knife and a small container containing marijuana in his pants pocket. (Video Exhibit E at 05:13-05:18; ER-101.) The officer did not open the container of marijuana or hold onto it—he instead placed it back in Mr. Nguyen's pocket. (ER-101 (incident report); Video Exhibit E at 05:13-05:18.) After frisking Mr. Nguyen, the officer ordered him to sit on the curb, and Mr. Nguyen said, "exactly the treatment I didn't want." (Video Exhibit E at 05:18-05:30.)

A second officer on the scene opened the passenger side door and asked Mr. Tran if he was on "probation or anything?" (Video Exhibit F at 03:18-03:19; ER-153.) Mr. Tran said, "No, sir." (Video Exhibit F at 03:19-03:20; ER-153.) The officer then ordered Mr. Tran to exit the car and place his hands on his head, and the officer then frisked Mr.

Tran.  (Video Exhibit F at 03:20-04:25; ER-153.)  During the search, the officer lifted Mr. Tran's shirt, touched his bare skin, and placed his fingers in the lining of Mr. Tran's shorts.  (Video Exhibit F at 03:20-04:25.)  The officer did not find any contraband on Mr. Tran and ordered him to sit on the curb next to Mr. Nguyen. (Video Exhibit F at 04:25-04:36.)

## III. The officers continued detaining Mr. Tran while they spent nearly five minutes retrieving his identification and running a records check on him

Officer Murphy asked Mr. Tran where his identification was, and Mr. Tran said it was in his wallet on the passenger seat of the car. (Video Exhibit E at 07:00-07:06.)  The officer retrieved Mr. Tran's wallet, opened it, and removed Mr. Tran's driver's license. (Video Exhibit E at 07:06-07:24.)  Officer Murphy then walked back to his patrol vehicle and ran both Mr. Nguyen's and Mr. Tran's driver's licenses through the police department's computer system.  (Video Exhibit E at 07:24-11:54; ER-101.)  Officer Murphy then ran a records check on the identifications for more than four minutes while other officers kept Mr. Nguyen and Mr. Tran detained, sitting on the curb. (Video Exhibit E at 07:24-11:54.)

In checking the identifications, Officer Murphy discovered that the driver had a valid driver's license, and that Mr. Tran was listed as a member of a gang called the "Asian Boys." (ER-101.) Neither person was on probation, parole, or otherwise subject to a warrantless search condition. (*See* ER-101.) The officer then asked Mr. Nguyen and Mr. Tran where they were going. Mr. Nguyen said that Mr. Tran had come to his house to do laundry, and Mr. Nguyen was now driving Mr. Tran back to his home, which was just down the block from the location of the stop. (Video Exhibit E at 11:55-12:07; Video Exhibit F at 09:30-09:40; ER-158.)

## IV. The officers searched the car for approximately 10 minutes and did not find any contraband

Officer Murphy then asked Mr. Nguyen and Mr. Tran if there was anything illegal inside the car, and they responded in the negative. (Video Exhibit E at 12:07-12:10.) The officer asked if he could search the vehicle, and Mr. Nguyen assented. (ER-101; Video Exhibit E at 12:16-12:18.) The officer then repeatedly asked Mr. Tran if he could search Mr. Tran's backpack that was located on the front passenger seat, saying "I'm just gonna check. If nothing's there, you guys are on your way." (Video Exhibit E at 12:18-12:35.) Mr. Nguyen, the driver,

9

interrupted and said, "I mean there's no reason for you to check."

(Video Exhibit E at 12:35.) The officer interrupted Mr. Nguyen and

said, "I'm asking him," pointing to Mr. Tran. (Video Exhibit E at 12:36.)

Mr. Tran did not provide consent to search his bag, and the officers then

began searching the car. (Video Exhibit E at 12:36-21:40.)

The officers spent nearly 10 minutes searching through the entire

car, which contained clothing in a laundry basket and various personal

items. (Video Exhibit E at 12:36-21:40.) The officers did not find any

contraband or any marijuana in the car. (ER-102; Video Exhibit E at

12:36-21:40.)

## V. Mr. Tran repeatedly refused the officers' requests for permission to search his backpack, but they searched it anyway

After he did not find any contraband in the car, Officer Murphy

lifted Mr. Tran's backpack from the front passenger seat and confirmed

with Mr. Tran that the bag was his—and not the Mr. Nguyen's.

(ER-102; Video Exhibit E at 21:40-21:21:45.) The officer then asked Mr.

Tran what was inside the backpack, and Mr. Tran said there was some

clothing, a Bluetooth speaker, and a small amount of marijuana inside.

(ER-102; Video Exhibit E at 21:40-21:44.) The officer then said, "If

that's all it is, can I just check it out? Weed's nothing. . . . Weed

nowadays it's just as easy as smoking a cigarette." (Video Exhibit E

at 21:56-22:16.). Mr. Tran explained that it was only a small amount of

marijuana and that he was not dealing marijuana. (ER-102; Video

Exhibit E at 22:16-22:42.)

The officer repeatedly asked Mr. Tran for permission to search the

backpack, and Mr. Tran repeatedly refused. (ER-101.) When he later

wrote a police report about the incident, Officer Murphy confirmed

twice that Mr. Tran "denied consent." (ER-101, 102.)

Even though Mr. Tran explicitly refused the officers' requests to

search his backpack, they did so anyway. (ER-102.) In the police

report, Officer Murphy justified the search by stating that he "needed to

search Tran's backpack to confirm he was not in possession of more

th[a]n the legal limit of 28.5 grams of marijuana[.]" (ER-102; *see also*

Video Exhibit E at 22:42-22:54 (giving the same reason at the time of

search).) Officer Murphy opened the front pocket of the backpack and

found a small container of marijuana, well within the legal limit in

California. (ER-102, 103 (confirming that it contained 7.6 grams of

marijuana); Video Exhibit E at 22:59-23:02.) The officer did not open

the container or inspect its contents.  (Video Exhibit E at 22:59-23:08.)
He instead placed the container back inside the backpack, where he
found it.  (Video Exhibit E at 22:59-23:08.)  The officer also, for the first
time, asked Mr. Nguyen when he had last used marijuana and whether
he was capable of driving safely, and Mr. Nguyen said he had smoked a
small amount that morning and was no longer intoxicated.
(Video Exhibit E at 23:15-23:35.)

Although he had already found the marijuana that supposedly
justified the search, the officer continued to search through the rest of
the bag, opening its main compartment and eventually finding a
handgun inside.  (ER-102; Video Exhibit E at 23:35.)  The officers
arrested Mr. Tran.  (ER-102.)  Only after they had conducted the search
and placed Mr. Tran under arrest did they conduct a field sobriety test
on Mr. Nguyen.  (ER-102.)  They then arrested Mr. Nguyen for driving
under the influence and later released him with a citation.  (ER-102.)

After the arrest, Mr. Tran gave a statement claiming ownership of
the gun and telling the officers that he is no longer involved with the
Asian Boys gang.  (ER-103.)

**VI.  Mr. Tran was charged with a federal crime for possessing a firearm, and he moved to suppress the physical evidence and his statements**

A federal grand jury returned an indictment charging Mr. Tran with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  (ER-243-44.)  Mr. Tran moved to suppress the physical evidence found during the traffic stop—the gun and ammunition—and his subsequent statements. (ER 62-63.)  Mr. Tran argued, among other things, that after the car was pulled over for a traffic violation, the officers unlawfully prolonged his detention by conducting a far-ranging criminal investigation unrelated to the mission of the stop, in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015).  (ER-77-84.)  Mr. Tran also argued that the officers' search of his backpack was unconstitutional since he did not provide consent for the search, and the officers did not have probable cause to believe that it contained evidence of a crime.  (ER-84-92.)

The Government opposed the motion to suppress, arguing first that Mr. Tran's seizure was not prolonged since Officer Murphy reasonably suspected that the vehicle may have been stolen and that Mr. Tran could have been involved.  (ER-218-21.)  As to the search, the

13

Government asked the Court to ignore the reason Officer Murphy

provided at the time of the search and in the police report, namely that

he suspected that Mr. Tran might have possessed a distribution amount

of marijuana. (ER-225.) Instead, the Government argued that the

search was lawful since the officers had probable cause to believe that

the car and Mr. Tran's backpack contained evidence of two other crimes,

namely "vehicle theft" and "driving under the influence of marijuana."

(ER-222-25.)

    In support of the Government's opposition, Officer Murphy

submitted a sworn declaration. (ER-230-31.) He declared, "[i]n my

training and experience, when a car's registration has been expired for

more than a few months, that often means that the car could have been

stolen." (ER-230.) The officer also declared that when he spoke to Mr.

Nguyen, "his explanations for the registration issue were vague and did

not seem to make sense" and that he became "argumentative and

resistant when I asked him to step out of the car," which further led

Officer Murphy to suspect that the cat was stolen. (ER-230.)

Additionally, while he had written in the police report that the car

smelled simply of "marijuana," Officer Murphy's declaration stated that

it smelled of "burned marijuana," which he stated led him to suspect Mr. Nguyen of driving under the influence. (ER-231.) Notably, at no time during or after the car stop did the officers find any burned marijuana residue, a partially smoked joint, or any other paraphernalia that could have been used to smoke marijuana. (*See* ER-230-31 (declaration); ER-97-108 (police report).)

In reply, Mr. Tran argued that the vehicle stop was unlawfully prolonged because the officers continued to detain him and Mr. Nguyen after any reasonable suspicion of vehicle theft was dispelled. (ER-234.) The officer ran the car's license plate through the police computer system, as well as Mr. Nguyen and Mr. Tran's identifications. (ER-234.) "Curiously, no reports of a stolen vehicle came up." (ER-234.) Additionally, even after they searched through the whole car, finding no evidence of vehicle theft or any other crime, the officers continued to detain Mr. Tran and attempted to obtain his consent to search his bag— at that point, there was certainly no basis to prolong the stop. (ER-234.)

For similar reasons, Mr. Tran argued that the Government failed to meet its burden to justify the bag search. First, by the time the

15

officers searched the bag—after they had run records checks on the car and searched the whole car—there was no probable cause that the vehicle was stolen, or that the bag would contain evidence of vehicle theft. (ER-236-37.) Additionally, after they searched the car, there was no evidence, and certainly not probable cause, that Mr. Tran's bag would contain evidence that Mr. Nguyen had been driving under the influence. (ER-237-38.)

Finally, Mr. Tran pointed out that Officer Murphy's declaration, written for the purpose of litigation, was the first time he indicated that he smelled *burned* marijuana emanating from the car. (ER-238.) This assertion, Mr. Tran argued, was not credible, and, at least, warranted an evidentiary hearing to determine whether the officer smelled burned or unburnt marijuana. (ER-240-42.)

**VII. The District Court denied the motion to suppress, reasoning that a vehicle stop that is 20 minutes long could not be unlawfully prolonged and that the driver's consent to search the vehicle extended to Mr. Tran's backpack**

The District Court held a hearing on the motion, at which it did not permit an evidentiary hearing but did permit oral argument. (ER-22-61.) The Defense began by arguing that the stop was unlawfully prolonged when the officers began investigating criminal activity unrelated to the lawful basis of the seizure, at which point the District Court clarified with the Defense that approximately 24 minutes "elapsed from the time they were stopped until the officer fi[nd]s the firearm." (ER-27.) The Court then stated, "You keep saying 'prolonged,' but 20 minutes is not prolonged." (ER-28.)

The Court then turned to the search, stating that "once the driver gave consent to search the car, everything that's in the car can be searched . . . Isn't that what the Supreme Court said?" (ER-29.) The Defense then argued that because the bag was clearly Mr. Tran's and he did not consent to the search of the bag, the driver's consent to search the car did not extend to the bag. (ER29-30.) The Court then stated, "It doesn't matter. According to the Supreme Court, it doesn't matter whether it belonged to him or anybody else. Once you -- once the

owner -- once the owner of the car gave consent to search, jury's out. It's a done deal. It doesn't matter whether it was his backpack." (ER-31.)

The Court then orally denied the motion. (ER-50.) The Court ruled that the initial car stop was lawful based on the car's expired registration, and that the stop was not unlawfully prolonged because "[i]t was less than 20 minutes that had elapsed since they had been asked to step out of the car" until the officers discovered the gun. (ER-51.) Additionally, the Court concluded that Officer Murphy's investigation was reasonable, and not prolonged, since he suspected that the driver was intoxicated and that the car may have been stolen. (ER-50.) As to the search, the Court concluded that the driver's consent to search the car authorized the officers to search Mr. Tran's bag. (ER-50.) Alternatively, the Court concluded, the so-called "vehicle exception" to the warrant requirement authorized the search since the officers formed probable cause "that the car contained evidence of a crime, including evidence of vehicle theft and/or driving under the

influence."[2]  (ER-50-51.)  Finally, the Court denied the Defense's request for an evidentiary hearing, finding there were no "disputed issues of material fact."  (ER-52.)

## VIII. Guilty plea, sentencing, and custody status

Mr. Tran entered a conditional guilty plea to the single-count indictment, which preserved his right to appeal the denial of his motion to suppress.  (*See* ER-8-20.)  The District Court sentenced Mr. Tran to 41 months' imprisonment, to be followed by three years of supervised release.  (ER-3.)  Mr. Tran is currently in custody serving the sentence imposed in this case.  According to the Bureau of Prisons' website, his projected release date is August 27, 2024.

---

[2] In reciting the facts that supported probable cause to search Mr. Tran's bag, the Court included the "driver's admission, that he had been smoking marijuana earlier."  (ER-51.)  But there was no dispute that the driver—Mr. Nguyen—admitted to smoking marijuana only *after* the officers began searching the bag.  (*See* ER-215-16 (Government brief stating that Mr. Nguyen admitted to smoking "while" Officer Murphy was searching the bag); *see also* Video Exhibit E at 23:15-23:35.)  To the extent the District Court might have relied on the driver's admission in deciding whether there was probable cause to search the bag, that was error.  *See United States v. Magallon-Lopez*, 817 F.3d 671, 674 (9th Cir. 2016) (Fourth Amendment analysis is based on "facts known to the officers" at time of search or seizure); *see also United States v. Faagai*, 869 F.3d 1145, 1150 (9th Cir. 2017).

## SUMMARY OF ARGUMENTS

The Government bore the burden to prove that the warrantless searches and seizures here complied with the Fourth Amendment. It failed to meet that burden for two reasons.

1.     The officers searched Mr. Tran's backpack without consent or probable cause that it contained evidence of a crime.  As to consent, the District Court's conclusion that the driver's general consent to search the car authorized police officers to search Mr. Tran's bag was contrary to well-established precedent.  For example, in *United States v. Welch*, 4 F.3d 761 (9th Cir. 1993), this Court held that a driver's general consent to search a car did not extend to a bag that officers knew belonged to a passenger, not the driver.  *Id.* at 763–65.  Given that the officers here knew that the bag was Mr. Tran's, and not the driver's, and that Mr. Tran explicitly refused consent for the search, the officers' conduct could not be justified based on the driver's general consent to search the car.

The Government fairs no better under the so-called "vehicle exception" to the warrant requirement.  The District Court concluded that the search was justified by the officers' suspicions that Mr. Nguyen

20

may have been driving under the influence (DUI) and that the car may have been stolen. But there was no probable cause to believe that the car contained evidence of either crime or that any such evidence could be found in Mr. Tran's bag.

As to car theft, Officer Murphy claimed he was suspicious that the car was stolen because of the expired registration. But he failed to explain why an expired registration would be indicative of car theft. Regardless, the other investigations he conducted before the search— learning that Mr. Nguyen had a valid license, obtaining his driver's license and proof of insurance, running the license plate and receiving no information about theft—did more to dispel any suspicion of theft than bolster it. Additionally, even if there was cause to believe the car was stolen—which there was not—the officers further lacked probable cause that any evidence of this crime would be found in the vehicle, and especially in Mr. Tran's bag.

Officer Murphy's putative suspicion that Mr. Nguyen may have been driving under the influence of marijuana similarly failed to create probable cause that there was evidence of that crime in the car or, especially, in Mr. Tran's bag. The Government argued that his

21

suspicion created probable cause that the car might have contained evidence of recent marijuana use, such as a "half-smoked joint." This reasoning fails for two reasons. For starters, the car search exceeded its lawful scope. Before he searched the car, Officer Murphy found a cannister of marijuana in Mr. Nguyen's pocket—that is, on the person he purportedly suspected of a DUI. But instead of inspecting the canister and checking if it contained the supposed object of the later car search—a half-smoked joint—the officer simply returned it to the driver's pocket. Suspicion of a DUI could not justify the extensive search of the car and Mr. Tran's bag after Officer Murphy repeatedly ignored the containers most likely to contain the evidence of that crime. In addition to exceeding the scope of a lawful search, the facts known to Officer Murphy at the time of the search did not form probable cause that the car, and especially Mr. Tran's bag, contained evidence of a DUI. The search was therefore unconstitutional.

2. After they pulled the car over for a traffic violation, the officers unlawfully prolonged the seizure of Mr. Tran by subjecting him to a far-ranging criminal inquiry unrelated to the mission of the stop or any independent reasonable suspicion of criminal activity. The District

Court flatly misstated the law when it concluded that Mr. Tran's detention was lawful because "20 minutes is not prolonged." (ER-28.) In *Rodriguez*, the Supreme Court concluded that a seizure was unconstitutionally prolonged when officers delayed it by eight minutes. *Rodriguez*, 575 U.S. at 354. The Court explained that a traffic stop may last no longer than necessary to effectuate the purpose of addressing the infraction, so authorization for the seizure "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.*

This Court has repeatedly found stops unconstitutionally prolonged under similar circumstances as are presented here. Most notably, in *United States v. Landeros*, 913 F.3d 862 (9th Cir. 2019), this Court concluded that officers unlawfully prolonged a car passenger's detention during a traffic stop where they delayed it by "several minutes" to obtain the passenger's identification and run a records check on him. *Id.* at 866-67. The Court explained that since a records check on a passenger is not part of the traffic-enforcement mission of a lawful stop, nor necessary for officer safety, prolonging the stop for that purpose is unlawful. The same is true here. The officers prolonged Mr.

Tran's detention for far longer than was at issue in *Landeros* to conduct a records check on him and other unrelated investigations.

For each reason, the officers violated Mr. Tran's Fourth Amendment rights and the fruits of those violations—the physical evidence and statements—should be suppressed.

## STANDARDS OF REVIEW

This Court reviews the denial of a suppression motion de novo and any underlying factual findings for clear error. *United States v. Wilson*, 13 F.4th 961, 967 (9th Cir. 2021). This Court reviews de novo whether "there is probable cause to support the warrantless search of an automobile." *United States v. Ibarra*, 345 F.3d 711, 715 (9th Cir. 2003). "The issue of whether a person has actual or apparent authority to consent to a search" is also "reviewed de novo." *United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013). Finally, the determination of whether reasonable suspicion supported an investigatory seizure is "a mixed question of law and fact," which is "also reviewed de novo." *United States v. Williams*, 846 F.3d 303, 306 (9th Cir. 2016).

# ARGUMENT

The Fourth Amendment protects people from unreasonable searches and seizures and generally requires a warrant issued upon probable cause.  U.S. Const. amend. IV; *Kentucky v. King*, 563 U.S. 452, 459 (2011).  Warrantless searches and seizures are per se unreasonable and are lawful only if they fall within "a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).  The Government bears the burden of proving that a warrantless search or seizure falls within such an exception.  *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017); *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).

The Government failed to meet its burden in two respects.  First, the officers searched Mr. Tran's backpack without consent or probable cause that it contained evidence of a crime.  Second, after they pulled the car over for a traffic violation, the officers unlawfully prolonged Mr. Tran's seizure by subjecting him to a far-ranging criminal inquiry unrelated to the mission of the stop or any independent reasonable suspicion of criminal activity.  For each reason, the officers violated Mr. Tran's Fourth Amendment rights and the fruits of those violations—the

25

physical evidence and statements—should be suppressed.  *See United States v. Ngumezi*, 980 F.3d 1285, 1291 (9th Cir. 2020) ("The typical remedy for a Fourth Amendment violation . . . is the exclusion of evidence discovered as a result of that violation from criminal proceedings against the defendant." (cleaned up)).

**I.    The evidence must be suppressed because the officers searched Mr. Tran's backpack in violation of the Fourth Amendment**

Officer Murphy violated Mr. Tran's Fourth Amendment rights by searching his backpack without a warrant or any applicable exception to the warrant requirement.  The District Court concluded that the search was lawful for two reasons: (1) the driver's consent to search the car authorized the officers to search Mr. Tran's bag, and (2) the officers formed probable cause "that the car contained evidence of a crime, including evidence of vehicle theft and/or driving under the influence." (ER-50-51.)  The District Court erred on both counts.  The Government failed to meet its burden to justify the warrantless search, and its fruits should be suppressed.

### A. Under long-settled precedent, the driver's consent to search the car did not authorize the officers to search the passenger's personal backpack

In opposing suppression below, the Government did not try to justify the search of Mr. Tran's backpack based on the driver's general consent to search the car. (ER-222-25 (Government brief).) But the District Court denied the motion on this basis anyway, reasoning that "[a]ccording to the Supreme Court, it doesn't matter whether it belonged to him or anybody else . . . once the owner of the car gave consent to search, jury's out. It's a done deal. It doesn't matter whether it was his backpack." (ER-31.) This was an incorrect statement of the law. In fact, in *United States v. Welch*, 4 F.3d 761 (9th Cir. 1993), this Court found a search unconstitutional and ordered evidence suppressed under nearly identical facts as those presented here. The same result is mandated here.

1.  "Although consent is a recognized exception to the Fourth Amendment's protection, the government has the burden of establishing the effectiveness of a third party's consent to a search of a defendant's property." *United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir.

27

2013) (quotation marks and citations omitted). "The existence of consent to a search is not lightly to be inferred." *Id.* (citation omitted).

A third party's consent to search someone else's property is valid only if the third party had actual or apparent authority to provide that consent. *Id.*; *see also United States v. Matlock*, 415 U.S. 164, 171 (1974). The Government can prove actual authority by showing that (1) "a third party had shared use and joint access to or control over" the searched property, or (2) "the owner of the property to be searched has expressly authorized a third party to give consent to the search." *Arreguin*, 735 F.3d at 1174 (quotation marks and citation omitted). Apparent authority to consent to a search exists where "the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *Id.* at 1174-75 (quotation marks and citations omitted).

2.      In *Welch*, this Court applied these principles to the precise issue presented here.  Welch's co-defendant McGee consented to the officers' search of a car.  *Welch*, 4 F.3d at 763.  The officers searched the car and found a purse belonging to Welch in the trunk, which they searched, revealing evidence of a crime.  *Id.*  This Court ruled that

McGee's consent to search the car was valid since he had joint control over it.  *Id.* at 764.  But "Welch's purse is another matter entirely."  *Id.*  The Court explained that just because McGee forfeited a privacy interest in the "host property"—the car—that "does not serve to forfeit the expectation of privacy in containers within that property" that McGee had no authority over.  *Id.*  Thus, for McGee's consent to extend to the purse, the Government had to show that McGee had some authority to consent to search the purse, not just the car.  *Id.* at 764-65.  It failed to do so.  *Id.*

Specifically, the Government failed to show that McGee had either actual or apparent authority over the purse.  *Id.*  Regarding apparent authority, McGee did not have apparent authority to search the purse since, although the officers did not expressly confirm that it belonged to Welch and not McGee, there was no evidence that would have led a reasonable officer to believe that McGee (a man) had authority to consent to the search of the purse.  *Id.*  at 765.  "[A]ny such belief would have necessarily rested on the erroneous legal assumption that the mere presence of the handbag in the trunk gave McGee control over it or access to its contents," and apparent authority cannot rest on such

legal error. *Id.* The Court concluded, "[b]ecause the government failed to carry its burden of demonstrating that the consent to search Welch's purse was valid, we must hold the search unlawful." *Id.*

Other federal courts of appeals and state supreme courts have reached the same conclusion on nearly identical facts as those presented here. For example, in *United States v. Jaras*, 86 F.3d 383 (5th Cir. 1996), the Fifth Circuit ordered evidence suppressed, concluding that a driver's consent to search a car did not extend to his passenger's suitcases located in the trunk. *Id.* at 389; *see also United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000) (affirming suppression order where the owner of a barn permitted officers to search the barn, but the officers failed to establish that the barn owner had authority over the defendant's briefcase the officers found inside). Similarly, in *State v. Suazo*, 627 A.2d 1074 (N.J. 1993), the New Jersey Supreme Court ordered evidence suppressed where a driver consented to a car search but the passenger-defendant notified the officers that a red bag located inside the car was his and not the driver's. *Id.* at 1077. The Court explained, "Although [the driver] clearly had the authority to consent to a search of the vehicle, defendant's claim of ownership put

30

the trooper on notice that someone other than the consenting party might have a superior privacy interest in the red bag." *Id.* And in *People v. Mead*, 931 N.W.2d 557, 565 (Mich. 2019), the Michigan Supreme Court ordered evidence suppressed since a driver's consent to search a car could not extend to a passenger's backpack, which, the court explained, "is used to transport personal items, which suggests individual ownership rather than common ownership." *Id.* at 565; *see also People v. James*, 645 N.E.2d 195, 203 (Ill. 1994) (Illinois Supreme Court concluding that officers could not search a passenger's purse found in a vehicle based on consent provided by driver).

3.     This Court's decision in *Welch* applies directly here.  The officers knew that the backpack they found on the front passenger seat belonged to Mr. Tran and not Mr. Nguyen, the driver.  Indeed, the officers explicitly confirmed with Mr. Tran that the bag was his. (ER-102; Video Exhibit E at 21:40-21:21:45.)  Knowing that the bag belonged to Mr. Tran, the officers repeatedly asked him for consent to search it, which he consistently refused.  (ER-101, 102 (police report stating twice that Mr. Tran "denied consent").)  It was thus clear to the officers that the bag belonged to Mr. Tran, not Mr. Nguyen, and that

Mr. Nguyen did not have authority over it. *Arreguin*, 735 F.3d at 1174. The doctrine of apparent authority cannot save the search, since there was no evidence that would have led a reasonable officer—after confirming that the bag belonged to Mr. Tran and not Mr. Nguyen—to believe that Mr. Nguyen had actual authority to consent to the search of the purse. "[A]ny such belief would have necessarily rested on the erroneous legal assumption that the mere presence" of the bag in the car gave Mr. Nguyen "control over it or access to its contents," and apparent authority cannot rest on such legal error. *Welch*, 4 F.3d at 765.

Mr. Nguyen's general consent to search the car thus did not authorize the officers to search Mr. Tran's bag.

> **B.** **The automobile exception did not authorize the search since the officers did not form probable cause that Mr. Tran's backpack contained evidence of a crime**

The District Court also concluded that the so-called "automobile exception" to the warrant requirement justified the search of Mr. Tran's bag. (ER-50-51.) Under that exception, officers can search a car if they establish "probable cause"—in other words, "a fair probability"—that contraband or evidence of a crime would be found in the car given the

totality of the objective facts known to the officers at the time. *United States v. Faagai*, 869 F.3d 1145, 1150 (9th Cir. 2017) (cleaned up); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991). Probable cause requires more than a "mere suspicion" that a vehicle might contain contraband or evidence of a crime. *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987).

The scope of a warrantless search under the automobile exception is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). Thus, an officer will have probable cause to search a particular container in a car if "there is a fair probability that contraband or evidence of a crime will be found in a particular place, 'based on the totality of circumstances.'" *Dawson v. City of Seattle*, 435 F.3d 1054, 1062 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011) ("The proposition that the justification for a search defines its permissible scope is well established.").

That is, to lawfully search Mr. Tran's bag, the officers needed to form probable cause that there was contraband or evidence of a crime in

the car *and* that any such evidence or contraband was likely to be found in Mr. Tran's bag.  *Ross*, 456 U.S. at 824; *see also Wyoming v. Houghton*, 526 U.S. 295, 307 (1999) ("[P]olice officers with probable cause to search a car may inspect passengers' belongings found in the car" if those belongings "are capable of concealing the object of the search.").

The District Court concluded that the search was justified by the officers' suspicions that Mr. Nguyen may have been driving under the influence and that the car may have been stolen.[3]  But there was no probable cause to believe that the car contained evidence of either crime or that any such evidence could be found in Mr. Tran's bag.  The search was therefore unconstitutional.

---

[3] In its briefing to the District Court, the Government explicitly disavowed Officer Murphy's stated reason for searching Mr. Tran's bag, namely that he was looking to see if there was a distribution amount of marijuana inside.  (ER-225.)  Any argument justifying the search on that basis is therefore waived for appeal.  *See United States v. Guerrero*, 921 F.3d 895, 898 (9th Cir. 2019) (suppression theories not raised below are waived under Federal Rule of Criminal Procedure 12); *United States v. Scott*, 705 F.3d 410, 415-16 (9th Cir. 2012) (applying Rule 12 waiver rule to the government's opposition to suppression motion); *cf. Reynoso v. Giurbino*, 462 F.3d 1099, 1110 (9th Cir. 2006) (party is bound by its concessions to district court).

### i. The officer's putative suspicion that Mr. Nguyen may have been driving under the influence could not justify the search

Officer Murphy's putative suspicion that Mr. Nguyen may have been driving under the influence (DUI) of marijuana did not create probable cause that there was evidence of that crime in the car or, especially, in Mr. Tran's bag. This justification for the search fails for two reasons.

1. Undergirding the Fourth Amendment is a protection against a "specific evil" that was "abhorred by the colonists," namely "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (describing general warrants). For this reason, police officers may not ignore the object of their search when they find it and then continue rummaging through a person's other belongings. But that is exactly what Officer Murphy did here.

Officer Murphy claimed that he smelled marijuana immediately after he pulled the car over and approached it on foot. (ER-101.) The Government argued below that this fact justified his search of the car because "Officer Murphy reasonably believed that the car – again, including the backpack inside it – could contain evidence that Nguyen

was driving under the influence, such as a half-smoked joint." (ER-224.) But before searching the car, Officer Murphy found a cannister of marijuana in Mr. Nguyen's pocket—that is, on the person he purportedly suspected of driving under the influence. (Video Exhibit E at 05:13-05:18; ER-101.) The officer was apparently not interested in that evidence, as he simply returned it to the driver's pocket, where he had found it. (Video Exhibit E at 05:13-05:18; ER-101.) The officer did not even open the cannister to determine whether there was any burned marijuana or a "half-smoked joint" inside. (Video Exhibit E at 05:13-05:18.)

Officer Murphy did not conduct any other investigation into Mr. Nguyen's sobriety until after he searched the car and conducted extensive, unrelated investigations. It took another 18 minutes, until after he had searched the car and begun searching Mr. Tran's bag, for the officer to ask Mr. Nguyen whether he had recently used marijuana and whether he could safely operate the vehicle. (Video Exhibit E at 23:15-23:35.) While he was searching Mr. Tran's bag, the officer found a small container of marijuana, but he again ignored that evidence and did not open the container to determine whether it

contained the partially burnt marijuana cigarette that was, according to the Government, the object of the search. (Video Exhibit E at 22:54-23:35.) The officer instead continued to search Mr. Tran's bag until he found a gun inside and had a basis to arrest Mr. Tran. (ER-102.) The officers then finally conducted a field sobriety test on Mr. Nguyen. (ER-102.)

The supposed suspicion of a DUI could not justify the extensive search of the car and Mr. Tran's bag when Officer Murphy repeatedly ignored the containers most likely to contain the evidence of that crime. For starters, the scope of "a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause." *Ross*, 456 U.S. at 823. And in the warrant context, it is well established that a warrant cannot justify continued searching once officers find the object of the warrant. *See Horton v. California,* 496 U.S. 128, 141 (1990). For example, "[p]olice with a warrant for a rifle may search only places where rifles might be and must terminate the search once the rifle is found." *Id.* (citation omitted).

37

A search of an automobile based on probable cause must have the same scope. *See Ross*, 456 U.S. at 823. Thus, during an automobile search, once an officer has found the contraband item justifying the search, any further searching must cease since there is no longer probable cause for the search. In this case, the Government argued that Officer Murphy was justified in searching for a partially burned marijuana cigarette that Mr. Nguyen might have recently used. If he found that partially burned cigarette in Mr. Nguyen's pocket, that would dispel probable cause that it was in the car. *See United States v. Weber*, 923 F.2d 1338, 1344 (9th Cir. 1990) ("[P]robable cause to believe that *some* incriminating evidence will be present at a particular place does not necessarily mean there is probable cause to believe that there will be more of the same.").

Police may not be permitted to avoid this limitation on the scope of a search by willfully ignoring the object of their search and thereby granting themselves permission to search other areas of a car. More specifically, when faced with the possibility of finding a partially smoked marijuana cigarette in Mr. Nguyen's pocket and thus curtailing his justification to search the car, Officer Murphy could not ignore that

evidence and then go ahead with an extensive car search instead.  Any contrary ruling would permit officers to commit the "specific evil" that was "abhorred by the colonists," namely "a general, exploratory rummaging in a person's belongings." *Coolidge*, 403 U.S. at 467. Permitting the conduct here would also run contrary to the basic principle that officers must use the "least intrusive" investigative methods available "to verify or dispel [their] suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality).

Additionally, the fact that Officer Murphy did not check—and thus eliminate—a more likely location for the object of the search undermines any probability that it would be found in the car.  *See Ross*, 456 U.S. at 824 (the lawful scope of a warrantless search under the automobile exception is "defined by the object of the search and the places in which there is probable cause to believe that it may be found"). The Supreme Court reached a similar conclusion in *Acevedo*.  The Court there concluded that there was probable cause to search a paper bag in the trunk of a car, but the police could not instead search the rest of the car since they "did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the

entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment." *Acevedo*, 500 U.S. at 580.

Officer Murphy could not extensively search the entire car and Mr. Tran's bag in the hopes of finding a partially burned marijuana cigarette when he repeatedly ignored other investigatory tools to confirm or dispel suspicions of a DUI and failed to look for the partially burned cigarette in the most obvious place it was likely to be found—in the cannister of marijuana in the pocket of the driver he claimed to suspect of a DUI.

2.    In addition to exceeding the scope of a lawful search, the facts known to Officer Murphy at the time of the search did not form probable cause that the car, and especially Mr. Tran's bag, contained evidence of a DUI.  As the Government recognized below, "[b]ecause marijuana use has been legalized to an extent in California, the smell of marijuana alone cannot support probable cause."  (ER-224 (citing *United States v. Vasquez*, No. 19-50275, 2021 WL 3011997, at *2 (9th Cir. July 15, 2021) (unpublished)).  The smell of marijuana may contribute to probable cause only where it is linked to some actual criminal offense, such as a DUI, under the totality of circumstances.

*See United States v. Malik*, 963 F.3d 1014, 1016 (9th Cir. 2020). Thus, in *Malik,* probable cause for a search was formed by the combination of the fact that the officers smelled burned marijuana emanating from a car *and* the driver's admission that he had smoked a marijuana cigarette. *Id.* And in *Vasquez*, a panel of this Court concluded that the combination of "several factors" supported probable cause, including the smell of burned marijuana, the location of the car in a driveway in front of a gang hangout, and the fact that the car was full of people and surrounded by a crowd that dispersed when the police approached. *Vasquez,* 2021 WL 3011997, at *2.

There was no similar evidence supporting the search here. Other than claiming to smell marijuana, Officer Murphy did not obtain any other evidence of a DUI before he searched the car. He did not ask the driver when he had last smoked marijuana until 10 minutes *after* the search began. (Video Exhibit E at 23:15-23:35.) He also failed to conduct a field sobriety test until *after* the search was completed. (ER-102.) There was also no indication that Mr. Nguyen had been driving erratically or behaved inebriated in any way for the 10 minutes

the officer interacted with him before the car search. (*See* ER-101-102; Video Exhibit E at 00:40-12:10.)

The officer's suspicion that the car would contain evidence of a DUI was even weaker than in other cases where this Court has found probable cause lacking. For example, in *United States v. Majourau*, 474 F.2d 766 (9th Cir. 1973), the Court concluded that erratic driving 80-90 miles from the border, combined with a suspicious paper bag, wet clothing, and a vehicle occupants' seeming impatience supported, at most, a "mere suspicion" that the occupants had crossed the border illegally, and not the probable cause required to search the entire vehicle. *Id.* at 769-770. Similarly, in *United States v. Wanless*, 882 F.2d 1459 (9th Cir. 1989), this Court concluded that a vehicle occupant's track marks, admission of drug use two days prior, and possession of drug paraphernalia might have raised "suspicion" of contraband but did not supply probable cause for a vehicle search. *Id.* at 1464-66. And in *Vasey*, this Court found a lack of probable cause that a vehicle contained contraband despite all the following facts: (a) the officer saw the defendant "stuffing his hand between the seats and handling something furtively on the right rear floorboard"; (b) the defendant had

42

an outstanding warrant on a drug-related charge; (c) the defendant was carrying a substantial amount of cash; (d) the officer noticed a sealed container of pills and another container holding three pills, where it was unclear whether he saw they were marked as aspirin; and (e) the officer had several years of experience. *Vasey*, 834 F.2d at 788.

So too, here. The smell of marijuana without any other evidence— such as a field sobriety test, erratic driving, slurred speech, or visible paraphernalia—did not supply probable cause that a DUI had been committed, let alone that evidence of that offense would be found in the car and Mr. Tran's bag. At most, the officers established a "mere suspicion" insufficient to justify the search. *Majourau*, 474 F.2d at 769-70.

### ii. The officers did not form probable cause that the car and Mr. Tran's bag contained evidence of car theft

There was similarly no probable cause that the car, and especially Mr. Tran's bag, contained evidence of car theft. For starters, Officer Murphy did not have probable cause to believe the car was stolen. Additionally, even if there was cause to believe the car was stolen, the Government failed to meet its burden to establish probable cause that

any evidence of that theft would be found in the car and especially in Mr. Tran's bag.

Before Officer Murphy pulled the car over, he ran its license plate through his patrol vehicle's computer system and learned that its registration had been expired for two years. (ER-100.) While he later testified that such an expired registration "often means that the car could have been stolen" (ER-230), the report only said that the registration was expired—it did not say that the vehicle was reported stolen (*see* ER-100).

No other information indicated the car was stolen. Officer Murphy ran Mr. Nguyen's identification through the police computer system, learning that he had a valid license. (ER-101.) Mr. Nguyen also provided him with proof of insurance, and the officer never stated that there was anything suspicious about it. (Video Exhibit E at 02:55-03:09; ER-101.) There was also no indication that the car's vehicle identification number (VIN) appeared in a stolen vehicle database. *Cf. United States v. Noster*, 590 F.3d 624, 628 (9th Cir. 2009) (describing how officers ran license plate number and VIN through "stolen vehicle database" to determine that vehicle was stolen); *United States v.*

*$277,000.00 U.S. Currency*, 941 F.2d 898, 899 (9th Cir. 1991)

(describing how officer looked for vehicles' "VIN in order to cross-check

whether the vehicles had been reported stolen").

Tellingly, after he searched the car, Officer Murphy never followed

up on the idea that the car was stolen—he simply towed the car for

having an expired registration, arrested Mr. Nguyen for driving under

the influence, and arrested Mr. Tran for the gun. (ER-102, 104.) These

facts fall far short of establishing probable case that the car was stolen.

Additionally, even if there was cause to believe the car was

stolen—which there was not—the officers further lacked probable cause

that any evidence of this crime would be found in the vehicle, and

especially in Mr. Tran's bag. The Government argued below that there

was cause to believe the car and Mr. Tran's bag would contain "the car's

actual ownership documents or registration tags, or other evidence of

theft." (ER-223-24.) But this is pure speculation. The Government

failed to produce evidence that car thieves would, for some reason,

remove a car's tags and keep them in the car. A more effective means of

learning whether the car was stolen would have been to run the car's

VIN through the police's database, which, again, Officer Murphy failed

45

to do.  The Government entirely failed to establish probable cause that the car would contain evidence of car theft.

At bottom, the suspicion here comes almost entirely from Officer Murphy's claim that when a car's registration is expired for more a few weeks, that "often means that the car could have been stolen." (ER-230.)  But "in the absence of any underlying facts as to why" the officer believed that the expired registration indicated car theft, this "conclusory statement" cannot establish probable cause.  *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir. 2012).

The Government failed to introduce evidence showing *why* an expired registration would indicate vehicle theft.  It is unclear if Officer Murphy's claim was that car thieves tend to target cars with expired registrations, or perhaps that once a vehicle is stolen, the thieves are unlikely to renew its registration.  The former claim seems illogical, but if Officer Murphy was making the latter claim, then that would indicate the car Officer Murphy pulled over had been stolen more than two years.  One would think that a car that had been stolen more than two years earlier would have been reported stolen.  Thus, the fact that the car was not reported stolen diminishes any suspicion Officer Murphy

had based on the expired registration.  At least, these questions show that the officer's conclusory statement about the expired registration did not rise to the probable cause required to conduct the search.

This Court's decision in *Cervantes* underscores this conclusion. There, officers surveilling a suspected stash house saw an unidentified male exit with a large white box, which was given to the defendant soon after.  *Cervantes*, 703 F.3d at 1136-37.  The defendant then drove circuitously to a residential neighborhood, using what officers described as counter-surveillance techniques. *Id.* at 1137.  Officers later stopped the defendant for a minor traffic violation and, after he was unable to produce his driver's license, searched his car and discovered two kilograms of cocaine inside the white box.  *Id.* at 1138.  This Court ordered the evidence suppressed, finding the facts fell short of probable cause.  *Id.* at 1139-40.  The Court reasoned that "in the absence of any underlying facts as to why" the officers believed that the house was a stash house, the claim was "conclusory" and could not establish probable cause.  *Id.* at 1139-40.  Other than the conclusory statement about the stash house, the remainder of the facts amounted to observations of minimal counter-surveillance tactics as the officers

followed the defendant to his destination. *Id.* This was not probable cause. *Id.*

Similarly, in *United States v. Underwood*, 725 F.3d 1076 (9th Cir. 2013), this Court found that a warrant affidavit failed to establish probable cause since "it is made up of conclusory allegations." *Id.* at 1084. The affiant claimed that possession of use-amount of marijuana indicated that a person might be involved in drug trafficking, but this Court rejected these claims since "these vague explanations add little if any support because they do not include underlying facts that the issuing judge may use to evaluate the affiant's reasoning or to draw his or her own inferences." *Id.*

So too, here. Officer Murphy's bald allegation that an expired registration "often means that the car could have been stolen" lacked any supporting facts or reasoning allowing a reviewing court "to evaluate the affiant's reasoning or to draw his or her own inferences." *Underwood*, 725 F.3d at 1084. And even if Officer Murphy's statement could create some minimal suspicion, his other investigations before the search—learning that Mr. Nguyen had a valid license, obtaining his driver's license and proof of insurance, running the license plate and

receiving no information about theft—did more to dispel those suspicions than bolster them. The facts here fall far short of probable cause that the vehicle was stolen or that the car contained any evidence of that crime.

*****

The Government failed to justify the warrantless search of Mr. Tran's backpack. The officers lacked consent or probable cause justifying the search. The conclusion cannot be different simply because the search happened to reveal something incriminating. *See United States v. Di Re*, 332 U.S. 581, 595 (1948) ("We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success."). The fruits of the unlawful search must be suppressed.

## II. The evidence must also be suppressed because the officers prolonged Mr. Tran's seizure in violation of the Fourth Amendment

### A. In *Rodriguez*, the Supreme Court ruled that officers may not delay a car stop for any amount of time to conduct criminal investigations unrelated to the mission of the stop

One "limited exception" to the probable-cause and warrant requirements permits a brief investigatory seizure (or "*Terry* stop") based on reasonable suspicion of criminal activity. *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Without reasonable suspicion, a person may not be detained even momentarily." *United States v. Washington*, 490 F.3d 765, 774 (9th Cir. 2007) (quotation marks omitted). A traffic stop is akin to a *Terry* stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *see also United States v. Gorman*, 859 F.3d 706, 714 (9th Cir. 2017).

"Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citations omitted). A traffic stop may last no longer than necessary to effectuate the purpose of

addressing the infraction, so authorization for the seizure "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* An officer's legitimate mission during a traffic stop includes determining whether to issue a traffic ticket and other ordinary inquiries, like checking the driver's license, inspecting the registration and proof of insurance, and determining whether the driver has any outstanding warrants. *Id.* at 355. A traffic stop becomes unlawful if its duration is "prolonged" (in other words, "'measurably extend[ed]'") beyond the time reasonably required to complete this mission. *Id.* at 354-55; *see also Gorman*, 859 F.3d at 715 ("unrelated investigations' are impermissible if they 'lengthen the roadside detention." (quoting *Rodriguez*)).

In *Rodriguez*, the Supreme Court concluded that police officers' delay of "seven or eight minutes" to bring a drug sniffing dog to a traffic stop unconstitutionally prolonged the stop. 575 U.S. at 350-52. The Court rejected the Eighth Circuit's conclusion that this eight-minute delay "constituted an acceptable *de minimis* intrusion on Rodriguez's personal liberty." *Id.* at 353 (quotation marks and citation omitted). Instead, the Supreme Court held that because a dog sniff is aimed at

detecting evidence of other criminal wrongdoing, it is not part of an officer's mission during a traffic stop, and *any delay* that resulted from this criminal inquiry was unconstitutional. *Id.* The Supreme Court also rejected the Government's contention that an officer could "incrementally" prolong a stop to conduct a dog-sniff search if he was otherwise diligent. *Id.* at 357. An officer cannot "earn bonus time to pursue an unrelated criminal investigation." *Id.* "The reasonableness of a seizure," the Court held, "depends on what the police in fact do." *Id.* If the dog-sniff search "adds time" to the stop, it has been unlawfully prolonged. *Id.*

As this Court subsequently acknowledged, *Rodriguez* does not permit even a "brief pause" to deal with other criminal-investigation matters unrelated to the traffic stop. *United States v. Landeros*, 913 F.3d 862, 866-67 (9th Cir. 2019) (stop unlawfully prolonged beyond mission of stop where officers demanded passenger's identification and then required him to exit the vehicle). For example, in *United States v. Evans*, 786 F.3d 779 (9th Cir. 2015), this Court found an unlawfully prolonged traffic stop—and ordered evidence suppressed—where officers delayed the stop by eight minutes. *Id.* at 784. And in *United*

*States v. Nault*, 41 F.4th 1073 (9th Cir. 2022), the Court noted approvingly that under *Rodriguez,* other circuit courts "have found stops unconstitutional when prolonged by under thirty seconds before officers developed independent suspicion." *Id.* at 1081 n.1 (citing *United States v. Clark*, 902 F.3d 404, 410–11 (3d Cir. 2018) (twenty seconds of questioning about criminal history); *United States v. Campbell*, 26 F.4th 860, 885 (11th Cir. 2022) (en banc) (twenty-five seconds of questioning about contraband)).[4]

The District Court thus flatly misstated the law when it concluded that Mr. Tran's detention was lawful because "20 minutes is not prolonged." (ER-28; *see also* ER-51 (ruling that Mr. Tran's seizure was not prolonged because "[i]t was less than 20 minutes that had elapsed since they had been asked to step out of the car" until the officers discovered the gun).) The issue is whether the officers conducted "unrelated investigations" that "lengthen[ed] the roadside detention" for any amount of time. *Gorman*, 859 F.3d at 715.

---

[4] In *Nault*, the Court ultimately ruled that a seizure was not unlawfully prolonged because the officer's "routine request for documents" was part of the mission of the traffic stop. *Nault*, 41 F.4th at 1081.

**B.** **This Court has repeatedly found car stops unconstitutional where they were prolonged for less time than Mr. Tran's**

This Court has repeatedly ordered evidence suppressed under similar circumstances as are presented here. Most notably, in *Landeros*, this Court concluded that officers unlawfully prolonged a car passenger's detention during a traffic stop. *Landeros*, 913 F.3d at 867-70. Officers prolonged the traffic stop for "several minutes" to obtain the identification of the front seat passenger—defendant-Landeros—after he initially refused to provide it. *Id.* at 865. This Court concluded that a "demand for a passenger's identification is not part of the mission of a traffic stop" since the "identity of a passenger . . . will ordinarily have no relation to a driver's safe operation of a vehicle." *Id.* at 868. The Court further concluded that demanding a passenger's identification cannot be justified by the officers' need to maintain their own safety during a stop since knowing a passenger's "name would not have made the officers any safer." *Id.* To the contrary, "[e]xtending the stop, and thereby prolonging the officers' exposure to Landeros, was, if anything, 'inversely related to officer safety.'" *Id.* (quoting *Evans*, 786 F.3d at 787). The Court

54

therefore concluded that officers violated the passenger's Fourth Amendment rights by prolonging his detention for "several minutes." *Id.* at 870.

Similarly, in *Evans*, this Court found that officers unlawfully prolonged a stop where they extended it for eight minutes to conduct an ex-felon registration check on the driver. *Evans*, 786 F.3d at 784. There was no dispute that the initial traffic stop was lawful or that the officers were permitted to check the driver's identification, insurance, and registration, and to issue a ticket or warning. *Id.* But the Court explained that the once those tasks were—or reasonably should have been—completed, the officers could not extend the stop to conduct general criminal inquiries. *Id.* The Court concluded, "[t]he ex-felon registration check, unlike the vehicle records or warrants checks, was wholly unrelated to [the officer's] 'mission' of 'ensuring that vehicles on the road are operated safely and responsibly.'" *Id.* at 786 (quoting *Rodrgieuz*, 575 U.S. at 355). Instead, the ex-felon registration check "was 'a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing.'" *Id.* (quoting *Rodrgieuz*, 575 U.S. at 355).

And in *Gorman*, this Court explained that the "Government's endeavor to detect crime in general or drug trafficking in particular cannot justify prolonging an ordinary traffic stop." *Gorman*, 859 F.3d at 715 (alteration and citation omitted). The Court therefore concluded that officers unlawfully prolonged a car stop by detaining defendant-Gorman for "nearly half an hour" to "perform[] non-routine investigative inquiries and question[] Gorman about matters unrelated to the traffic infraction." *Id*. The Court explained that the "stop should have taken only a short time—enough time to warn Gorman about left lane rules, determine whether to issue a traffic citation, and perform routine checks on his driver's license and registration." *Id.*

## C. The officers violated Mr. Tran's Fourth Amendment rights by prolonging the stop to conduct a far-ranging criminal inquiry

As in *Landeros*, *Evans*, and *Gorman*, the officers here violated Mr. Tran's Fourth Amendment rights by lengthening the roadside detention to conduct criminal investigations unrelated to the mission of the traffic stop or any independent reasonable suspicion. About three minutes after pulling over Mr. Nguyen's car, Officer Murphy seemed to be wrapping up the traffic stop: Mr. Nguyen had given Officer Murphy his

56

driver's license and proof of insurance, and he had finished discussing the expired registration with the officer. (ER-101; Video Exhibit E at 00:40-03:09.) Officer Murphy told Mr. Nguyen that he would confirm the documentation and, assuming "everything's valid," he would just give Mr. Nguyen a "fix it ticket and that's it." (Video Exhibit E at 02:35-02:45.) But instead of checking the documentation and issuing a ticket, the officer then prolonged the stop by 20 minutes to conduct unrelated criminal investigations without any basis to continue detaining Mr. Tan.

1. After noting that he might issue a "fix it ticket," Officer Murphy did not check Mr. Nguyen's documentation, issue a ticket, or otherwise further the mission of the stop by investigating the expired registration or any suspicion that Mr. Nguyen may have been driving under the influence. Instead, Officer Murphy first ordered Mr. Nguyen to exit the vehicle and then subjected him to a frisk. (Video Exhibit E at 03:10-05:30; ER-101.) Another officer then began asking Mr. Tran— the passenger—investigatory questions that were unrelated to the lawful mission of the stop, asking if he was on "probation or anything." (Video Exhibit F at 03:18-03:19; ER-153.) These questions did not serve

the mission of a traffic stop and thus unlawfully prolonged it. *See Landeros*, 913 F.3d at 867-70 (demanding identification or information from passenger was unrelated to mission of stop); *Evans*, 786 F.3d at 786-87 (conducting ex-felon registration check, even on the driver, was unrelated to traffic-stop mission); *Amanuel v. Soares*, No. 13-cv-05258, 2015 WL 3523173, at *7 (N.D. Cal. 2015) (applying *Evans* and concluding that investigatory questioning, including asking the driver if he was on probation or parole, impermissibly lengthened stop).

2.   The officer then ordered Mr. Tran to exit the car and place his hands on his head, and the officer then frisked Mr. Tran for more than a minute.  (Video Exhibit F at 03:20-04:25; ER-153.)  The frisks unlawfully prolonged the stop in two ways.  First, absent reasonable suspicion that Mr. Tran was "armed and dangerous," there was no lawful basis to frisk him.  *Arizona v. Johnson*, 555 U.S. 323, 332 (2009); *see also United States v. I.E.V.*, 705 F.3d 430, 435 (9th Cir. 2012) ("The *sole justification* of the search in the present situation is the protection of the police officer and others nearby." (cleaned up)).

Additionally, even if the officers had a valid basis to frisk Mr. Tran—which they did not—they far exceeded the lawful scope of a *Terry*

frisk when they invasively searched him for more than a minute, lifted his shirt, touched his bare skin, and placed their fingers in the lining of Mr. Tran's shorts. (Video Exhibit F at 03:20-04:25.) This lengthy search far exceeded the lawful bounds of a *Terry* frisk, which may include only a brief pat down of a "suspect's *outer clothing*" to determine whether he is carrying a weapon or contraband. *I.E.V.*, 705 F.3d at 440 (emphasis in original).

These unjustified and lengthy frisks amounted to "unrelated investigations" that "lengthen[ed] the roadside detention." *Gorman*, 859 F.3d at 715; *see also United States v. Clark*, 902 F.3d 404, 410–11 (3d Cir. 2018) (stop unlawfully prolonged by twenty seconds of questioning about criminal history).

3.     After the officers removed Mr. Tran from the vehicle and frisked him for weapons—finding no evidence of wrongdoing—there was no basis to continue detaining him. As the Supreme Court has explained, when an officer lawfully stops a car for a traffic violation, "[t]here is probable cause to believe that the driver has committed a minor vehicular offense, but there is no such reason to stop or detain the passengers." *Maryland v. Wilson*, 519 U.S. 408, 413 (1997).

Nevertheless, the Supreme Court has acknowledged that by stopping a car, "a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)). But once a passenger has been ordered out of the stopped vehicle, and frisked for any weapons, the removed passenger poses no danger to the officers and any lawful reason to detain the car and its driver no longer justifies the continued detention of the passenger. *See Wilson*, 519 U.S. at 414; *cf. Delaware v. Prouse*, 440 U.S. 648, 662–63 (1979) ("Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed."). Any continued detention of the passenger can be lawful only if it is justified based on individualized suspicion of the passenger. *See United States v. Pulliam*, 405 F.3d 782, 787 (9th Cir. 2005) (stating that a car passenger may "contest the legality of his own detention" during a traffic stop (citation omitted)).

But instead of letting Mr. Tran go home after he was frisked, Officer Murphy asked for Mr. Tran's identification and then continued

to detain him while the officer retrieved Mr. Tran's wallet from the car, removed his identification from it, and then ran both Mr. Nguyen's and Mr. Tran's driver's licenses through the police department's computer system. (Video Exhibit E at 07:00-11:54; ER-101.) Retrieving Mr. Tran's wallet and then running it through the computer system took nearly five minutes. (Video Exhibit E at 07:00-11:54.)

This nearly five-minute delay to obtain the *passenger's* identification and run a records check on him was plainly unlawful under *Landeros*: a "demand for a passenger's identification is not part of the mission of a traffic stop" since the "identity of a passenger . . . will ordinarily have no relation to a driver's safe operation of a vehicle." *Landeros*, 913 F.3d at at 868; *see also Gorman*, 859 F.3d at 715 ("Non-routine record checks . . . are paradigm examples of 'unrelated investigations' that may not be performed if they prolong a roadside detention absent independent reasonable suspicion."). This delay alone warrants reversal. *Landeros*, 913 F.3d at at 868 (finding Fourth Amendment violation where officers prolonged stop by "several minutes" to check passenger's identification).

4. The officers then continued to unlawfully prolong the stop to question Mr. Tran and Mr. Nguyen in an apparent attempt to uncover general criminal activity. After running the records checks, the officers discovered that Mr. Nguyen's license was valid and that neither he nor Mr. Tran was on probation, parole, or otherwise subject to a warrantless search condition. (*See* ER-101.) The officers then began questioning Mr. Nguyen and Mr. Tran and learned that Mr. Nguyen was driving Mr. Tran to his home down the block from the location of the seizure. (Video Exhibit E at 11:55-12:07; Video Exhibit F at 09:30-09:40.) Instead of letting Mr. Tran walk home at that point, Officer Murphy began questioning Mr. Nguyen and Mr. Tran about the contents of the car, asking if there was any contraband inside. (Video Exhibit E at 12:07-12:10.) These questions were also "aimed at detecting evidence of ordinary criminal wrongdoing" and were not "ordinary inquiries incident to the traffic stop." *See Gorman*, 859 F.3d at 715 (quotation marks omitted).

5. The officers then prolonged Mr. Tran's detention for more than 10 minutes while they searched the car and attempted to obtain consent to search his bag. After Officer Murphy obtained Mr. Nguyen's

consent to search the car, he repeatedly asked Mr. Tran for consent to

search his backpack, promising to let Mr. Tran go home if there was no

contraband inside.  (Video Exhibit E at 12:08-12:36.)  After failing to

obtain consent to search the bag, the officers continued to detain Mr.

Tran while they spent nearly 10 minutes searching through Mr.

Nguyen's car, finding no contraband or evidence of any crime.  (Video

Exhibit E at 12:36-21:40.)  They then spent an additional minute trying

again to convince Mr. Tran to consent to the search of his bag.  (Video

Exhibit E at 21:40-22:42.)

The officer thus delayed Mr. Tran's detention by an additional 10

minutes in their attempts to gain a justification to search the bag—

these were quintessential tactics "aimed at detecting evidence of

ordinary criminal wrongdoing."  *See Gorman*, 859 F.3d at 715

6.     After again failing to obtain consent, Officer Murphy

searched the bag anyway, stating that he needed to ensure that Mr.

Tran was not carrying a distribution amount of marijuana.  (ER-102;

*see also* Video Exhibit E at 22:42-22:54.)  Then, after the officer began

searching the bag and found a small amount of marijuana (within the

legal limit in California), he did not stop the search; he instead

continued detaining Mr. Tran—further lengthening the seizure—to search the rest of the bag. (Video Exhibit E at 22:54-23:35.) The officers then finally found what they were looking for—evidence of a crime unrelated to the traffic stop. (Video Exhibit E at 23:35.)

### D. No independent reasonable suspicion justified Mr. Tran's prolonged detention

In prolonging Mr. Tran's seizure beyond the mission of the traffic stop, the officers did not form "independent reasonable suspicion justifying each prolongation." *Evans*, 786 F.3d at 786. An officer has the requisite reasonable suspicion only if, given the totality of the circumstances, he "has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396-97 (2014). Thus, to justify prolonging Mr. Tran's seizure, the officers were required to form suspicion particular to Mr. Tran, and not only to the vehicle or its driver. *See Landeros*, 913 F.3d at 868 (finding prolonged seizure of passenger unreasonable despite reasonable suspicion of other occupants of vehicle). The officers failed to form that particularized suspicion here.

64

In addition to the simple traffic violation that motivated the traffic stop—an expired registration—the Government argued below that the officers' conduct was justified based on their suspicion that the driver, Mr. Nguyen, may have been driving under the influence of marijuana and that the car may have been stolen. (ER-218-21.) These justifications cannot create reasonable suspicion justifying the officers' prolongations of the stop.

1.     As to the claim that the officers suspected Mr. Nguyen of driving under the influence, this justification fails because the officers spent no time investigating that issue and because it would not provide any justification to seize Mr. Tran, who was not driving the vehicle. Officer Murphy claimed that he immediately smelled marijuana when he approached the car. (ER-101.) But he did not conduct any investigation into the driver's sobriety for another 23 minutes, after he had already frisked both men, extensively questioned them, run both of their identifications, searched the entire car, and begun searching Mr. Tran's bag. After he had completed all of those unrelated investigations, Officer Murphy asked Mr. Nguyen about the last time he had used marijuana and whether he could safely operate the vehicle.

(Video Exhibit E at 23:15-23:35.)  Then, after Mr. Tran's bag was searched and he was placed under arrest, the officers finally conducted a field sobriety test on Mr. Nguyen.  (ER-102.)  The officers thus delayed Mr. Tran's detention by over 23 minutes before they even began investigating the driver's sobriety.

Earlier on, when he was frisking Mr. Nguyen, Officer Murphy did find a small canister of marijuana in the driver's pocket.  (Video Exhibit E at 05:13-05:18; ER-101.)  But the officer was apparently not interested in that evidence, as he simply returned it to the driver's pocket, where he had found it.  (Video Exhibit E at 05:13-05:18; ER-101.)  The officers' 20-minute prolongation cannot be justified based on a crime they did not investigate during the prolonged detention.  *See Evans*, 786 F.3d at 786 ("each prolongation" must be related to reasonable suspicion of criminal activity).

Additionally, to the extent the officers had reasonable suspicion that the driver had been under the influence, that would have provided suspicion to detain the driver, not Mr. Tran.  In *Landeros*, this Court explained that while the officers may have had suspicion that the two women in the backseat were violating underage drinking or curfew

rules, there was no suspicion that the passenger, Landeros, had violated any laws nor did suspicion arise simply because he refused to provide identification. *Landeros*, 913 F.3d at 868-69. So too, here. Even if the driver could be detained to investigate his capacity to operate a vehicle, that did not provide any justification to detain Mr. Tran, who was simply a passenger in that vehicle.

2. The officers' supposed suspicion that the vehicle was stolen similarly fails to justify their conduct since the officers did not spend any of the prolonged 20 minutes of the stop investigating whether the car was stolen. Before Officer Murphy pulled the car over, he ran its license plate through his patrol vehicle's computer system and learned that its registration had been expired for two years. (ER-100.) While he later testified that such an expired registering "often means that the car could have been stolen" (ER-230), the report only said that the registration was expired—it did not say that the vehicle was reported stolen (*see* ER-100). The officer then pulled the car over and spent the first three minutes of the stop talking to Mr. Nguyen about the registration and obtaining Mr. Nguyen's identification and proof of insurance. Officer Murphy then told Mr. Nguyen that he would confirm

the documentation and, assuming "everything's valid," he would just give Mr. Nguyen a "fix it ticket and that's it." (Video Exhibit E at 02:35-02:45.)

But at that point, Officer Murphy did not proceed to investigate the car's registration or confirm that the car was not stolen. He did not run Mr. Nguyen's identification or proof of insurance through the police computer system, nor did he check the VIN in a stolen vehicle database. *Cf. Noster*, 590 F.3d at 628 (describing how officers ran license plate number and VIN through "stolen vehicle database" to determine that vehicle was stolen). The officers instead proceeded to frisk Mr. Nguyen and question and frisk Mr. Tran. (Video Exhibit E at 03:10-05:30; Video Exhibit F at 03:20-04:25.) Officer Murphy then finally ran Mr. Nguyen's identification through the police computer system, learning that he had a valid license. (ER-101.)

In checking Mr. Nguyen's identification, Officer Murphy did not learn any information indicating the car was stolen, and he did not conduct any further investigation into that matter (for example, he never checked the car's VIN). He instead proceeded to question Mr. Tran and Mr. Nguyen about unrelated criminal activity, and then he

68

eventually searched the car and then Mr. Tran's bag. (Video Exhibit E at 12:07-23:35.)

To the extent Officer Murphy suspected that the car may have been stolen, he had to use the "least intrusive" investigative methods available "to verify or dispel [his] suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality). He failed to do so. The officer prolonged the stop by 20 minutes, not to investigate whether the car was stolen but instead conducted lengthy investigations "aimed at detecting evidence of ordinary criminal wrongdoing." *Rodriguez*, 575 U.S. at 355. This was an unconstitutional seizure. *See id.*

*****

The officers had no basis to continue to detain Mr. Tran while they conducted criminal investigations unrelated to the expired registration, Mr. Nguyen's capacity to drive, or any other task unrelated to the mission of the traffic stop. This was a textbook case of an unconstitutionally prolonged seizure. The fruits of the prolonged seizure—the gun and Mr. Tran's statements—should have been suppressed. *Landeros*, 913 F.3d at 870 (stating that evidence obtained

as the result of an unconstitutional seizure "is ordinarily tainted by the prior illegality and thus inadmissible").

## CONCLUSION

For the foregoing reasons, Mr. Tran respectfully requests that the Court reverse the denial of his motion to suppress, vacate his conviction, and remand for further proceedings.

Dated: June 23, 2023          Respectfully submitted,

CUAUHTEMOC ORTEGA
FEDERAL PUBLIC DEFENDER

By: /s/ *Joshua D. Weiss*
    Joshua D. Weiss
    Deputy Federal Public Defender

*Counsel for Defendant-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 22-50147

The undersigned attorney or self-represented party states the following:

◉ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/ Joshua D. Weiss | **Date** | Jun 23, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17** | *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 22-50147

I am the attorney or self-represented party.

**This brief contains** | 13,867 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Joshua D. Weiss     **Date** | Jun 23, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 08**          *Rev. 12/01/2018*